CLYDE et al. v. RICHMOND & D. R. CO. et al.

In re BROWN et al.

(Circuit Court, E. D. Virginia. April 26, 1893.)

RAILROAD COMPANIES—RECEIVERS— RIGHT OF BONDHOLDERS TO INTERVENE.
Where, in a foreclosure suit, a receiver is appointed for the property of a railroad company which owns or controls a large number of other roads constructed and operated under separate charters, the fact that a single trust company is trustee under 12 different mortgages or trust instruments executed by several corporations in the system is not of itself sufficient ground for allowing a committee representing bondholders under the said trusts to become a party plaintiff in the suit, in the absence of any-

thing showing negligence on the part of the trustee in protecting their interests, or that there is any conflict between the various interests represented by the trustee.

In Equity. Bill by William P. Clyde and others against the Richmond & Danville Railroad Company and others for the appointment of receivers and the administration of the property and assets of the railroad company. On petition by J. Wilcox Brown and others to be made parties complainant in said suit. Dismissed.

Richard M. Venable, Barton & Wilmer, Frank P. Clark, and Joseph Packard, Jr., for petitioners.

A. H. Joline, Henry Crawford, and Hugh L. Bond, Jr., for defendants.

GOFF, Circuit Judge. On the 16th day of August, 1892, this court, on the petition of William P. Clyde and others, appointed Frederic W. Huidekoper and Reuben Foster receivers of all and singular the property and assets of the Richmond & Danville Railroad Company, as fully described in the bill, to have and to hold the same, as the officers of, and under the orders and directions of, the court. They duly qualified as such receivers, and are now in possession of the "Richmond & Danville system of railroads," and all the property connected therewith. The Richmond & Danville Railroad Company was authorized under its original charter, and the amendments thereto, (under legislation by the state of Virginia,) not only to locate, construct, and operate the line of railroad between Richmond and Danville, in Virginia, but also to acquire the control of other railroads and transportation lines in that state and elsewhere, by purchase or lease, and to own the stock and bonds thereof and guaranty the same. Its own charter line is of about 150 miles of road. Its authorized and outstanding capital stock is $5,000,000. It has by purchase or acquisition of stock, or by written leases or operating contracts, obtained possession and control of 26 other railways, built under different charters, and owned by various corporations, among them the Georgia Pacific Railroad Company and the Columbia & Greenville Railroad Company. The lines of railways comprising the Danville system are situated in the states of Virginia, North Carolina, South Carolina, Georgia, Alabama, and Mississippi, and are operated under the direction of one set of general officers. The total mileage of the system is 3,320 miles. The aggregate outstanding capital stock of the lines of the system amounts to $43,482,950. The bonded debts of such roads, and the rental obligations which the Danville Company has assumed, and is liable for in consequence of its control of the same, amount to $71,178,-126. A further statement of the financial condition of the Danville system and of the Richmond & West Point Terminal Railway & Warehouse Company (one of the defendants to this suit) is not deemed necessary in connection with the matter now under consideration. Complainants pray, among other things, that the court will administer the railroad,—the assets and property of the Richmond & Danville Company,—and that it will marshal all the prop-

erty held by the said system, ascertain the respective liens and priorities existing upon each separate road, and the amount due upon each and every of the mortgages or other trusts, and enforce the rights, liens, and equities of each and all of the stockholders and creditors of said companies, as the same may be found and decreed. It is set forth in the bill that the Central Trust Company of New York is the trustee in the two deeds of trust executed by the terminal company February 1, 1887, and March 1, 1889, in and by which a great portion of the stock and bonds held by the terminal company, including the stocks and bonds of the Danville system held by said company, were conveyed to secure certain bonds issued by the terminal company. It is also stated that the said Central Trust Company is the trustee in "over twelve of the trust deeds" executed by the Danville Company and divers of the roads in its system.

On December 19, 1892, J. Wilcox Brown, William H. Blackford, Frederick M. Colston, Skipwith Wilmer, John Gill, John A. Whitridge, John B. Ramsay, Frank P. Clark, Richard M. Venable, and John M. Nelson filed their petition in this cause, asking permission to intervene, to be made parties complainant, and to make and file such pleadings as they should think necessary and proper in order to protect their interests. The petition alleges that the petitioners have been chosen by the holders of a large number of the bonds issued by railroad companies which form a part of the Richmond & Danville system to represent them in any litigation, and especially to represent them in this suit, and in any foreclosure proceedings on any of the mortgages or trust deeds executed by the Richmond & Danville Railroad Company, or any of the companies forming a part of that system. Petitioners allege that bonds amounting to the aggregate to more than a million of dollars have been deposited with them as such committee, the same being "second mortgage bonds of the Georgia Pacific Railroad Company," "second mortgage bonds of the Columbia & Greenville Railroad Company," and "mortgage bonds of other of the roads constituting the said Richmond & Danville Railroad system." They also allege that besides the large amount of bonds held by them as such committee, under agreement with said bondholders, they are each and every one of them owners in their own right of such bonds in various amounts. They charge that it is necessary, for the purpose of protecting the interests represented by them, that they should be allowed to intervene in this suit, and have an opportunity to be heard herein. The Central Trust Company has been made a party to this suit, and has filed an affidavit in the nature of an answer to the petition now under consideration, in which it is stated that said company has duly presented to the master to whom this cause has been heretofore referred proof of claim of all the bonds and mortgages with which it is concerned, and with which petitioners are concerned as bondholders. It also states that it has no such conflicting interests, as such trustee, as will disqualify it from representing all its bondholders.

The petitioners do not allege that the trustee has acted in bad faith, or that it has in any manner failed or refused to properly rep-

resent their interests. They claim that, for the protection of the interests represented by them, they should be allowed to intervene; but they do not show that such interests are not now honestly protected in the manner provided by the bondholders themselves. They ask that they be made parties, but they assign no valid reason why it should be done. The argument is made that the trusts represented by the Central Trust Company are conflicting, and that said company cannot faithfully represent at one and the same time such opposing interests. The petitioners offer no proof to sustain this assertion, and they present no instance of unfairness and no circumstance indicating fraud on the part of the trustee. Petitioners represent the same bondholders and the same interests that the Central Trust Company does, and, if such interests are so variant and antagonistic as to render it improper for that company to act as trustee, then it must follow that the petitioners themselves, for the same reason, would also be incapacitated to act.

All the various interests created by the different trusts, mortgages, and liens will be considered by and reported upon by the master, and then have the scrutiny of counsel, and the protection of the court. It will not be presumed that the trustee will be unfaithful to the trusts confided to it, and it will be time enough to consider the question of making the bondholders or their committees parties for their own protection when the trustee fails to promptly and faithfully discharge its duties. It will not do to permit bondholders in such proceedings as this, to become parties in their individual capacity, or by committees, without showing why their interests will not be properly guarded by the trustee selected when the trust was executed, and then fully authorized to represent them. It would produce great trouble, cause endless confusion, and needlessly incumber the record, to permit the holders of bonds and coupons secured by mortgages to make themselves parties in foreclosure proceedings without assigning cause. The holders of bonds, coupons, and stocks are constantly changing, and, if they are proper and necessary parties to such litigation, it will be difficult to mature such cases for hearing; and in many instances, particularly in the courts of the United States, the jurisdiction of the court might fail or be questioned when the transfer of ownership was made.

I think the rule is now well established that the individual bondholder and the separate beneficiary will not be made parties to suits relating to the mortgage or trust deed unless it is alleged and shown that the trustee is incompetent, or for some reason cannot faithfully represent the cestui que trust. The following cases will be found of interest upon this question: Skiddy v. Railroad Co., 3 Hughes, 320; Wetmore v. Railroad Co., 1 McCrary 466, 3 Fed. Rep. 177; Railroad Co. v. Howard, 7 Wall. 392; Richter v. Jerome, 123 U. S. 233, 8 Sup. Ct. Rep. 106; Shaw v. Railroad Co., 5 Gray, 162; Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. Rep. 182; Van Vechten v. Terry, 2 Johns. Ch. 197; Kerrison v. Stewart, 93 U. S. 155; Richards v. Railroad Co., 1 Hughes, 28; also, Jones, Corp. Bonds, § 398; 2 Fost. Fed. Pr. 87.

Other questions were argued by counsel for petitioners, but, as

the matters to which they apply are not set forth in the petition, they cannot now be considered. The difficulties anticipated by petitioners, relative to conflicting interests and priorities of liens, may in fact never arise, and certainly cannot be passed upon by the court until they are properly raised by the pleadings. It follows from the conclusions I have reached that the prayer of petitioners to be made parties complainants in this suit must be denied, and their petition be dismissed. I will enter an order to that effect.