BOWLING GREEN TRUST CO. v. VIRGINIA PASSENGER & POWER CO. et al.

(Circuit Court, E. D. Virginia. October 13, 1908.)

1. RAILROADS (§ 190*) — SUIT TO FORECLOSE MORTGAGES — REORGANIZATION PLAN.

In consolidated suits to foreclose various liens upon railroad property, upon the question of ordering a sale of the property in advance of a determination of the rights of the several parties and the right of bondholders to intervene, a plan of reorganization, proposed by certain of the bondholders, may properly be considered.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 190.*]

2. CORPORATIONS (§ 482*)—MORTGAGES—FORECLOSURE—INTERVENTION.

Mortgage bondholders have no right to intervene in a suit by the trustee to foreclose the mortgage, unless negligence, incompetency or improper conduct of the trustee, injuriously affecting their interests, is established; but the failure of the trustee to join in contesting the validity or amount of a prior mortgage, where there is a bona fide contest of the same by other parties in interest, is a sufficient ground for permitting the bondholders to intervene and make such contest.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 482.*]

3. RAILROADS (§ 192*) — FORECLOSURE OF MORTGAGE—SALE OF PROPERTY—DISCRETION OF COURT.

In a suit to foreclose various liens on railroad property, it is within the discretion of the court to order a sale of the property in advance of settling the respective rights and priorities of the parties, and such discretion should be exercised, where it appears undesirable to continue the operation of the property by receivers, and by proper reservations in the decree of sale the rights of all parties can be protected.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 192.*]

In Equity.
See, also, 132 Fed. 921; 133 Fed. 186.

Under the above style, five suits in equity are pending in this court, entitled briefly: (1) Bowling Green Trust Company, Trustee, v. Virginia Passenger & Power Company, Richmond Passenger & Power Company, and Richmond Traction Company. (2) Central Trust Company of New York v. Richmond Passenger & Power Company, Bowling Green Trust Company, et al. (3) Metropolitan Trust Company of New York, Trustee, v. Richmond Passenger & Power Company, Bowling Green Trust Company, et al. (4) Equitable Trust Company of New York v. Virginia Passenger & Power Company, Bowling Green Trust Company, et al. (5) John A. Roebling's Sons Company v. Virginia Passenger & Power Company, Richmond Passenger & Power Company, Richmond Traction Company, and the complainant trustees in the first four suits. The litigation involves the property of the street railway companies and power and electric plants in the cities of Richmond, Manchester, and Petersburg, and the adjoining counties of Henrico, Chesterfield, and Dinwiddie. The purposes of the four first mentioned suits, generally,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

164 F.—48

are to foreclose the mortgages to the complainant trustees, respectively—the suit by the Bowling Green Trust Company against the Virginia Passenger & Power Company being to foreclose the consolidated mortgage given by said Virginia Passenger & Power Company upon the property in question, the latter company having acquired all of said property and the property of the constituent companies, subject to certain underlying incumbrances thereon, and given to said Bowling Green Trust Company the general or blanket mortgage sought to be foreclosed; the suit of the Central Trust Company of New York being to foreclose against the Richmond Passenger & Power Company one of the underlying mortgages aforesaid upon the property of the Richmond Passenger & Power Company; the suit of the Metropolitan Trust Company, trustee, being, among other things, to foreclose an underlying mortgage, also given by said Richmond Passenger & Power Company, subject to the lien of the Central Trust Company's mortgage; the suit of the Equitable Trust Company being to foreclose an underlying mortgage given by the Southside Railway & Development Company; and the suit of John A. Roebling's Sons Company against the Virginia Passenger & Power Company, being a general creditors' bill against said Virginia Passenger & Power Company and all of the constituent companies and the trustee aforesaid in said several mortgage deeds, and others, to subject generally all the property and estate of the Virginia Passenger & Power Company to the payment of its debts.

After the maturity of said several causes, the same were duly consolidated under the style of "Bowling Green Trust Company, Trustee, v. Virginia Passenger & Power Company and Others," and by decree entered in said combined cause on the 10th of March, 1905, were referred to Special Master Addison L. Holladay to take generally an account of the property and assets of the several companies, respectively, the liens thereon, and their order and priority, with directions to report as in said order set forth; and the special master was authorized to make separate reports from time to time. On the 16th of April, 1908, the master filed in the consolidated cause a separate report, purporting to show the property, real and personal, assets, and franchises of the Richmond Passenger & Power Company, and the liens thereon, and their priorities. On the 27th of June, 1908, he filed in said consolidated cause another separate report, purporting to show the property, real, and personal, assets, and franchises of the Southside Railway & Development Company, the Virginia Internal Improvement Company, the Virginia Electrical Railway & Development Company, the Westhampton Park Railway Company, the Virginia Passenger & Power Company, and the Richmond Traction Company, and the liens and priorities thereof. On the 24th day of July, 1908, the special master filed another report in said consolidated cause on the subject of the "alleged diversion of good will, customers, and property from the Richmond Passenger & Power Company to the Virginia Passenger & Power Company." To these several reports numerous exceptions have been filed, and the cause is now before the court upon the several applications of the Bowling Green Trust Company, the Central Trust Company, and the Equitable Trust Company of New York for decrees of foreclosure and sale in said consolidated cause, and each of the several causes, in which said respective applicants are complainants, in advance of the court's passing upon the exceptions so taken to the several reports of the master.

The Metropolitan Trust Company, trustee, earnestly opposes the sale asked for at this time, and in advance of the determination of the questions raised upon the exceptions to the reports aforesaid, and especially to the court's decreeing sale (a) in advance of determining the validity of the Metropolitan Trust Company's mortgage and the amount due thereon; (b) in advance of determining the question of the validity of a certain mortgage, and the amount due thereon, known as the "Richmond & Manchester mortgage," upon the property of the Richmond Passenger & Power Company, ahead of the mortgage of the Central Trust Company, and hence prior to the Metropolitan Trust Company's mortgage; (c) in advance of determining what diversions, if any, have been made of the property of the Richmond Passenger & Power Company properly subject to its mortgage, by the Virginia Passenger & Power Company; (d) in advance of determining the validity of the deed of 23d of January, 1902, from the Richmond Passenger & Power Company to

the Virginia Passenger & Power Company, and the agreement of the last-named company, in consideration of such conveyance, to pay the debenture bonds secured in the Metropolitan Trust Company mortgage.

Upon the hearing of this application for a decree of sale, and the objections of the Metropolitan Trust Company thereto, Frank E. Howe and others, claiming to hold bonds to the amount of $102,000, part of the issue of January 1, 1900, of $3,000,000 bonds by the Richmond Passenger & Power Company, secured under its mortgage to the Central Trust Company, dated April 13, 1900, and sought to be foreclosed, asked leave to file their petition to be heard in their own behalf, because of the failure of the trustee, among other things, to represent them properly on the question of the validity of the Richmond & Manchester bonds, aforesaid, and as to whether there had been any diversion of property subject to the mortgage under which they were secured. With this petition was filed an alleged plan of reorganization of the properties, in which it appears that the bondholders generally under their mortgage propose to join, and in which the contested indebtedness under the Richmond & Manchester mortgage is treated as a valid lien. The Metropolitan Trust Company likewise tendered to the court one of the alleged plans of reorganization, with affidavit attached.

To the right of Howe and others to intervene as individual bondholders, the Central Trust Company, trustee, excepted, as did the Bowling Green Trust Company, and each company tendered certain affidavits explanatory of the action of the different trust companies and of said plan of reorganization, and likewise excepted to the right of the court to take notice of such plan of reorganization.

Munford, Hunton, Williams & Anderson, for Bowling Green Trust Co. and John A. Roebling's Sons Co.

Joline, Larkin & Rathbone and Leake & Carter, for Central Trust Co.

Davis & Davis, L. L. Lewis, and Byrne & Cutcheon, for Metropolitan Trust Co.

Coke & Pickrel, for Equitable Trust Co. of New York.

WADDILL, District Judge (after stating the facts as above). The preliminary questions presented are (1) as to the right of the bondholders under the Richmond mortgage to the Central Trust Company to appear in their own behalf, and (2) whether the reorganization plan referred to can be considered. The ground on which it is claimed the reorganization should be taken into account is not for any merit or disadvantage there may be in it, or the right of any party to join therein, but merely as to its effect upon the rights of parties in interest, as bearing upon the question of whether the court at this time should exercise its discretion to make sale of the property. For this purpose the plan of reorganization may be considered, as well as its relevancy to the charge made by the intervening bondholders against their trustee, and accordingly the same may be filed, as requested by the intervening bondholders. With the fairness and equity of the plan we have nothing to do. The persons joining therein manifestly have the right to do so, and the court, certainly upon the present pleadings, is without authority or jurisdiction to control them in their undertakings in that regard, or to say what may be the outcome of the same. The case of Farmers' Loan & Trust Co. v. Toledo, etc., R. Co., 67 Fed. 53, a decision of the Circuit Court for the Northern District of Ohio, by Judge Taft, seems to be express authority on this subject.

Just when and when not individual bondholders shall be allowed to intervene and be heard in their own behalf, is well settled under fed-

eral authorities, and certainly in the courts in this circuit. They have no such right, unless it is averred and shown that their trustee has been derelict in the discharge of his duty to them. His negligence, incompetency, or improper conduct in and about the particular transaction must be established. The cases in this circuit especially bearing on this subject are Skiddy v. A., M. & O. R. R., Fed. Cas. No. 12,922, 22 Fed. Cas. 274,286, Clyde v. R. & D. R. R. Co. (C. C.) 55 Fed. 445, and Bowling Green Trust Co. v. Virginia Passenger & Power Co. (C. C.) 132 Fed. 921; and the decisions of the Supreme Court of the United States are Shaw v. Railroad, 100 U. S. 605, 25 L. Ed. 757, and Richter v. Jerome, 123 U. S. 233, 246, 8 Sup. Ct. 106, 31 L. Ed. 132.

The averments of the petition of intervention in this case relate more particularly to what may be termed the negligence of the trustee. They are to the effect that in this litigation, in which it is claimed that all but five of the 400 bonds of $1,000 each embraced in what is known as the "Manchester mortgage," which comes immediately ahead of the mortgage securing the bonds held by the petitioners, have been paid off and extinguished, and no longer constitute as to them a paramount lien on the property. This question has been fully investigated before the master, and he has reported adversely to the claim that said bonds have been paid, which now amount to some $570,000 and constitute a lien upon the property. This report is excepted to by the junior lienor, the Metropolitan Trust Company, and is one of the hotly contested issues in the case. The trustee in the mortgage under which petitioner claims has not joined in these exceptions, further than to raise the technical question that the validity of the mortgage and the bonds secured thereunder is not involved in the Central Trust Company suit, and that the proper parties to litigate that subject are not before the court, although the rulings of the court and of the special master in the combined causes and under the general order of reference are to the contrary of his view. It is further charged that said trustee has failed to join in the contest as to the property alleged to have been diverted from the lien of the mortgage.

These alleged omissions of the trustee relate to something pertaining to this litigation, of which the court has knowledge, and must take judicial notice of. While there are many things the trustee should exercise a broad discretion about, and be largely influenced, if not governed, by the directions of an overwhelming majority of those secured under the mortgage, still it may be seriously doubted whether he should be permitted to deprive the bondholders of the right of contesting the validity of a prior mortgage to the one in which they are secured, as well as the amount due thereunder, if they desire to do so, and the trustee elects to act to the contrary. In Farmers' Loan & Trust Co. v. Toledo, etc., R. Co. (C. C.) 67 Fed. 53, in discussing the question of whether or not stockholders should be admitted to interpose and in the name of the company contest the validity of bonds due under the mortgage on the company's property, Judge Taft, speaking for the court, said:

"The refusal of the board of directors to make a valid and equitable defense to the foreclosure of the mortgage, and to the sale of all the properties and franchises belonging to the road, when the existence of such defenses is

brought to their knowledge, would of itself constitute such gross neglect or fraud on their part as to require the court to permit their interested cestuis que trustent, the stockholders, to make the defense themselves"—citing Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401.

The principle stated seems to apply to the action of the trustee, where there appears to be a bona fide contest over the prior mortgage, as here, certainly to the extent that the court should allow the bondholders to come in, make defense themselves, or require the particular or some substituted trustee to do so. In Skiddy v. A., M. & O. R. R., Fed. Cas. No. 12,922, 22 Fed. Cas. 274,286, it is said:

"It is nowhere alleged in this petition, original or amended, that the trustees or their counsel, so far as this suit has progressed, have not acted for the benefit of all the bondholders under the mortgage, without partiality or prejudice. No single act of the trustee in the conduct of the suit is referred to as detrimental to or in antagonism of the interest of the petitioners."

And in Bowling Green Trust Co. v. Virginia Passenger & Power Co (C. C.) 132 Fed. 925, it is said, referring to the bondholders:

"They will have the right to  *  *  *  bring to the attention of the court any misconduct or dereliction of duty on the part of the complainant trustee, or others connected with the litigation or management of the property under the court's control; and this may be carried to the extent of the removal of an improper, incompetent, or derelict trustee, and the substitution of others in his stead. But none of these things should be done, unless charges of unfaithfulness be specifically made and established, or unsuitableness clearly shown."

In the view taken by the court, it sufficiently appears that the Central Trust Company, trustee, is not now contesting, and does not in the future purpose to controvert, the matters referred to by the petitioning bondholders; and said bondholders, if they desire so to do, and at their own expense, should be allowed to intervene to protect their interests, particularly in view of the fact that the court is asked by the trustee to decree a sale of the entire subject-matter in advance of the ascertainment of the liens and settlement of the rights of the parties. After the foreclosure, unless by proper reservations at this time, it will be too late for these bondholders to make, or join with others in making, the contest they wish to respecting the amount due under the prior mortgage, or the alleged diversion of property subject to the lien of the mortgage under which the bonds are secured.

Considering the application for sale of the property in advance of the determination of the liens and ascertainment of the priorities thereof, presented by the exceptions to the master's report, it may be said that this motion is one addressed to the sound discretion of the court, and in the exercise of which the court should be influenced and controlled in its action by what is fair and right to be done, having regard to the subject-matter of the litigation and to the rights of all parties in interest. That the court can decree a sale at this time in advance of settling any, if not all, of the questions involved in the various exceptions, seems clearly to be within the legal discretion of the court. Bank v. Shedd, 121 U. S. 74, 7 Sup. Ct. 807, 30 L. Ed. 877; Mellen v. Iron Works, 131 U. S. 352, 369, 9 Sup. Ct. 781, 33 L. Ed. 178; Wabash R. R. v. Adelbert College, 208 U. S. 382, 28 Sup. Ct. 182, 52 L. Ed. 379; Bound v. S. C. R. R. (C. C.) 50 Fed. 853; Compton v. Jesup,

68 Fed. 263, 289, 313, 15 C. C. A. 397; Alabama Mfg. Co. v. Robinson, 72 Fed. 708, 19 C. C. A. 152; Low v. Blackford, 87 Fed. 392, 31 C. C. A. 15; Toledo R. R. v. Continental Trust Co., 95 Fed. 497, 36 C. C. A. 155.

In the exercise of its discretion, however, the court should as far as possible, by proper reservation in any decree of sale, preserve and protect the rights of the parties for future consideration. Viewing this application in this light, the objections most strongly pressed why the sale should not now be decreed will be considered. Those relating to the ascertainment of whether there has been any diversion of the property, or not, from the Richmond Passenger & Power Company to the Virginia Passenger & Power Company, and the validity of the undertaking on the part of the Virginia Passenger & Power Company to pay the debenture bonds secured in the Metropolitan Trust Company's mortgage, under the deed of the 23d of January, 1902, can undoubtedly be determined as well after as before a sale of the property. The sale of the property without settling the amount of indebtedness due under the Richmond & Manchester mortgage, the lien prior to that of the mortgage of the Central Trust Company, sought to be foreclosed, presents a greater complication, but in no respect an insuperable barrier to an immediate sale, especially as it is proposed to sell subject to the right hereafter to foreclose that mortgage. The property could doubtless be sold free and clear of the lien of that mortgage, leaving to the parties litigant the right to contest their rights against the fund arising from the proceeds of sale. But, since it is suggested that technically the trustee in the Manchester mortgage has not formally been brought into court, the better plan is perhaps to sell subject to said mortgage, and in that event the junior lienors would not be required to redeem as to the debt secured in the mortgage, and any purchaser could take into account the fact that there existed a dispute as to this liability against the property.

The sale of the property of the Richmond Passenger & Power Company in advance of ascertaining the amount due under the Metropolitan Trust Company mortgage, and determining the validity of said mortgage, can doubtless be made. But whether it ought to be is a different question, and upon the whole case the conclusion of the court is that these questions respecting this particular mortgage, to the end that those interested therein may know whether they have anything to redeem for and the amount thereof, ought to be settled in advance of a sale of the property. Chicago, etc., v. Fosdick, 106 U. S. 47–71, 1 Sup. Ct. 10, 27 L. Ed. 47; Railroad Co. v. Swasey, 23 Wall. 405, 23 L. Ed. 136; Parsons v. Robinson, 122 U. S. 112, 7 Sup. Ct. 1153, 30 L. Ed. 1122; Morgan v. Railroad Co., 137 U. S. 193, 11 Sup. Ct. 61, 34 L. Ed. 625. This being done, and the amount of the Central Trust Company mortgage ascertained, as to which there is really no dispute, and that of the small prior lien upon which there is a balance of $123,-000 admitted by all parties, the Metropolitan Trust Company would know what had to be paid in order to redeem the property, and the sale could thus be had with little or no delay.

In reaching this conclusion that the property ought now to be sold, the court is not unmindful of the many objections there are to a sale

in advance of the ascertainment and settlement of the parties' rights; but these are outweighed by other considerations, which should control. The litigation has already been quite extended, and the improbability of an early settlement is manifest to all. The property is of a public nature, and of the kind that ought not to be kept longer than necessary under the control of the court. The receivership has been a most successful one, so far as the upbuilding, maintenance, and operation of the property is concerned. Yet it has been impossible to keep up the interest on the entire indebtedness secured and at the same time make desired improvements and comply with demands for increased and extended service, made necessary by the rapidly increasing growth of the several communities through which the various lines are operated. While large sums have been expended in the payment of interest on the underlying mortgages, on those sought to be foreclosed but little has been paid, and those speaking for parties most largely interested are urgently pressing for a sale, to the end that the property may be bought in by them, or sold to others and they awarded what is due to them.

Believing that the reasons presented are sufficiently cogent and urgent to call for the sale of the property at the earliest practicable moment, the same will be ordered as herein indicated.