American National Bank and Trust Company, Appellee, v. Illinois Improvement and Building Corporation et al., Appellees.
Appeal of Robin P. Allen, Appellant.

Gen. No. 37,660.

18

Opinion filed June 26, 1935. Rehearing denied July 10, 1935.

SHULMAN, SHULMAN & ABRAMS, of Chicago, for appellant; MEYER ABRAMS, of counsel.

GOTTLIEB & SCHWARTZ, of Chicago, for appellee American Nat. Bank & Trust Co. of Chicago; HARRY

N. GOTTLIEB, ULYSSES S. SCHWARTZ and CLAUDE A. ROTH, of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This cause is in this court by the petitioner, Robin P. Allen, upon two appeals, one from an order denying his motion based upon his petition to intervene in Case No. 37,660 in this court, and the other from the final decree of foreclosure and sale, being Case No. 37,865. These appeals were consolidated in this court on the motion of the petitioner.

The proceeding is one of foreclosure filed by the American National Bank and Trust Company, as trustee, and from the bill it appears that it was filed upon default by the mortgagor, and that the trustee seeks to foreclose the trust deed dated December 1, 1928, on a leasehold of the ground located at Number One North La Salle street, Chicago. The trust deed secured $5,250,000 of six per cent first mortgage sinking fund bonds, and also $250,000 of six per cent general mortgage leasehold serial bonds of like date. The mortgagor under the trust deed is the Illinois Improvement and Building Corporation, the owner of the leasehold estate up to April 29, 1933, when this corporation sold and assigned its title thereto to a corporation known as One LaSalle Street Building Corporation. The fee to the ground is owned by the University of Chicago. The mortgagor improved this land by the erection of a 47-story office building.

The petition filed by Robin Allen, the intervener, alleges that the petitioner was the owner of bonds amounting to $10,000 of the issue described; the filing of the bill by the complainant on June 30, 1932, without making any bond owners parties, the only defendant being the mortgagor; that from the date of the filing of the bill to the date of the hearing no pleadings

were filed other than the bill of complaint and the answer of the defendant mortgagor.

It is charged in the petition that a pretended notice for the appointment of a receiver was served by the attorneys for the complainant, and by their agreement the mortgagor was allowed to remain in possession and manage the property, and to receive as compensation for its services two and one-half per cent of the gross income, besides a commission on new leases and renewals.

It is further charged that when the mortgagor was unable to furnish the $100,000 bond agreed upon, the attorneys agreed to take a $25,000 bond. The mortgagor conveyed its equity to a corporation with a capital investment of $1,000, and this new corporation was permitted to operate the premises and to receive the same compensation by the consent of the complainant to the order permitting the new corporation to take possession.

The petition further alleges that the underwriter, the seller and the trustee were dominated and controlled by the officers and directors of the Straus National Bank & Trust Company; that in the sale of such securities the representation was made that they were 100 per cent safe, and by the system of monthly deposits the interest of the bondholders would be safeguarded. It is further charged the petitioner purchased his bonds as the result of these representations, and presented his coupons, which were cashed by the Straus National Bank & Trust Company, without informing him of the defaults which then existed. Petitioner discovered that there were existing defaults from the allegations of the bill.

The petition further charges that the bond issue was not a safe investment, and that while it was represented that the real estate was appraised 50 per cent in value above the bond issue, such appraisal was false, and thereby the petitioner was deceived.

It is also charged in the petition that the new corporation, which now holds title, was formed to aid the bondholders' committee in a plan to coerce the bondholders to deposit the bonds with complainant as depositary by means of threats to the nondepositors that the committee would acquire the property at the foreclosure sale at its nominal bid, and the new corporation, which did not assume the debt, would redeem from the sale in the interest of the depositors, and the nondepositors would receive the proceeds of the nominal bid.

The petition prays that the trustee be removed, and a new trustee be appointed, and that the interest of the petitioner, as well as that of the other bondholders, be protected, and that the order allowing the payment of two and one-half per cent of the gross income and commission to the new corporation be vacated, and that a receiver be appointed to operate the premises.

Subsequently, the chancellor found in a decree that defaults occurred in deposits since January 1, 1932, resulting in the mortgagor not being able to pay the interest due on July 1, 1932, in the sum of $157,000; that defaults were made in the payment of 1928, 1929 and 1930 taxes, and that such defaults were in excess of $105,000; that the complainant, as trustee, was entitled to $10,000 for his fees and $22,000 for its counsel fees, making a total sum of $32,000; that there was due on the first mortgage bonds $6,155,086.87; that there is due on the general mortgage bonds $293,099.37 and that the decree provides for the sale of the premises.

It further appears from the decree that the mortgagor corporation was properly allowed to remain in possession under the former order, and that the new corporation was to remain in possession under the same order until the expiration of the period of redemption, or until the further order of the court. According to the decree, the court retained jurisdic-

tion to pass upon the trustee's account and rights from time to time and to administer the trust property.

The appellant contends that the only question for consideration by this court is the legal sufficiency of the petition; that the petition alleged a state of facts by which the petitioner would be aggrieved by the result of the decree and that petitioner was entitled to his day in court. Unless the trial court, after an examination of the petition, acted in plain violation of its discretionary power, this court will not interfere. The motion by the petitioner for leave to file his petition is not granted, as a matter of course.

In the consideration of the sufficiency of the facts alleged in the petition, this court will apply the law to actions of this character. In a proper case the petitioner may be allowed to intervene, provided it appears from his petition that his interest is of such a character that the petitioner will either gain or lose by the legal operation of the decree, and for that reason the petitioner's rights will be protected and adjudicated. *Wightman v. Evanston Yaryan Co.*, 217 Ill. 371.

The trust deed provides for foreclosure upon a default by the mortgagor, and in the event of such action, the trustee is to represent the bondholders and to act for them in a representative capacity, and continue as such until the litigation is terminated by the terms of the decree, whereby the rights of all parties are adjudicated.

The right of a trustee to act in a foreclosure proceeding for the benefit of the bondholders is supported by what is said by the author, in "Fletcher Cyclopedia Corporations," ch. 39, sec. 3179, entitled "Mortgages and Deeds of Trust":

"The trustee is the representative and agent of the bondholders in many matters, including all litigation connected with the trust, not only in the courts below,

but also on appeal, and a judgment in an action affecting the subject matter of the trust, to which the trustee is a party and by which he is bound, binds the bondholders, though they may not be parties nor participate in the proceedings. If the bondholders bring the suit where the trustee is given power to protect them, their petition is demurrable on the ground that they have no legal capacity to sue. The general rule is that the bondholders are bound by the acts of the trustee, in the absence of fraud.'' The author cites numerous cases in support of this rule.

The petition does not question the foreclosure proceeding by the trustee as being a proper one, nor allege that it was not provided for by the terms of the trust deed and the conditions contained in the bond.

The theory of the petitioner as alleged in his petition, in part, is that the trustee in the approval of certain orders entered in the foreclosure suit was without authority, and by such conduct was disqualified and should be removed.

The Supreme Court in the case of *Wightman v. Evanston Yaryan Co.*, 217 Ill. 371, above referred to, said what we regard as pertinent to the issues involved herein, as follows:

''In *Dennis v. Spencer*, 51 Minn. 259, the question before the court being whether the appellant had the right to intervene and participate in the trial of an action, it was held: 'The interest which entitles a party to intervene in an action between other parties must be in the matter in litigation in a suit as originally brought, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal effect of the judgment therein.' See, also, *McClury v. State Bindery Co.*, 3 S. Dak. 362; 44 Am. St. 799. The same doctrine has been held in Colorado, Iowa, Nebraska, New Mexico, Texas and other States.

"While, of course, these decisions are not directly in point, yet by analogy they sustain the rule announced in equity proceedings, and a summary of the limitations upon the rights of persons to intervene in actions to which they have been made parties is found in the American and English Encyclopedia of Law, (vol. 17, 2d ed. p. 185), as follows:

" 'The intervenor must take the suit as he finds it. He is bound by the record of the case at the time of his intervention. If he claims property in controversy, he can interfere only so far as is necessary to prove his right to it. He cannot, under such circumstances, contest the plaintiff's claim against the defendant, or raise an issue as to the formality of the pleadings or the regularity of the procedure in the principal cause, nor can he plead exceptions having for their object the dismissal of the action. He cannot change the issue between the parties, nor raise a new one. He cannot insist upon a change in the form of procedure nor delay the trial of the action,'—and each of these several limitations is well supported by the authorities cited in the note. The reason for thus qualifying the right to intervene rests upon the principle that parties to a suit have the right to proceed with it to final judgment or decree free from interference by others, and if parties desire to obstruct the litigation, except as qualified in the foregoing, they must do so by an original action."

It is wholly immaterial that the bonds were represented to the petitioner as a safe investment by the agent of the house of issue, and of course is not pertinent in this foreclosure suit. The petitioner takes suit as he finds it and is bound by the record and the rule as stated by the Supreme Court in the case of *Wightman v. Evanston Yaryan Co., supra.* The fact is that because of failure of the mortgagor to pay the amount due, the foreclosure suit was instituted by

the trustee. Again, the fact that the mortgagor conveyed title to a similar corporation of smaller capital will not militate against this cause. It is urged, however, that the court permitted the owner to remain in possession and to collect the rents, on a commission basis, and account for the same; that the court was imposed upon when it entered an order consented to by the parties in court. The facts do not warrant such an inference. When the holder of the title, that is the mortgagor, conveyed it to the grantee, the grantee thereafter was permitted to take possession, collect the rents and make distribution and was. allowed a commission subject to the approval of the court. This of itself was not, as suggested, a fraud upon the chancellor who entered the order. The petition filed in the instant case contains no allegation of fact that by such order the petitioner was injured. The building constructed on the leasehold interest of the mortgagor consisted of a 47-story office building, and after the order was entered the building was not operated for the benefit of the holder of the legal title. The net amount appearing from an order of accounting is to be applied for the benefit of the bondholders. The court has retained jurisdiction, and the party having funds will be obliged to account, subject to the approval of the chancellor. So at all times the court is in control of the property and the party collecting income from the property.

It is also urged that the trustee is the successor of the Straus National Bank & Trust Company, and that the Bondholders' Committee was organized and consisted of certain members of the Straus organization who were interested in a reorganization plan which was not for the benefit of the bondholders.

Assuming that the trustee in the instant case did act in conjunction with the Bondholders' Committee, this fact of itself would not indicate that fraud had

been practiced by the committee and the trustee, nor would the failure of the trustee to proceed with the foreclosure, of itself, stamp the delay as fraud. It does not appear from the allegations of the petition that the bondholders were deprived of their security, nor that any right of the bondholders was lost by the delay. The foreclosure was a matter of record, of which the petitioner was chargeable with notice, not only from the filing of the suit, but also from the fact that he had knowledge that his bonds were in default by reason of his failure to receive the amount due under the terms of the several bonds.

Petitioner does not claim that his security in the 47-story office building was lessened in value by the delay. The trustee is not chargeable with acts which tend to destroy values, nor that he entered into a conspiracy with others to carry out a plan to deprive petitioner of his rights, together with those of all the other bondholders. A trustee in a foreclosure proceeding, because he may have acted with a bondholders committee, is not disqualified by such act alone. It is apparent that the bondholders' committee was organized for the purpose of aiding the bondholders, as we have already stated, and this is not disputed by any concrete facts charged in the petition. At least, the petition does not charge that the members of the committee had entered into a scheme whereby they would gain at the expense of the bondholders. Conjectures are not helpful in determining the truth of the charge that the acts of the several parties were not for the benefit of the bondholders. Upon a similar question in the case of *Continental & Commercial Trust & Savings Bank v. Allis-Chalmers Co.*, 200 Fed. 600, where this rule was approved, the court said:

"To entitle a stockholder to intervene and defend a suit against the corporation to foreclose a mortgage on its property, where there was an admitted default

in interest, which, under the mortgage, authorized foreclosure, the stockholder must allege facts clearly showing the necessity of the intervention to protect rights of the corporation, and general allegations in his petition of fraud and collusion between 'certain persons,' including officers of the corporation, and that the corporation had funds applicable thereto sufficient to have paid the interest on the mortgage debt and prevented the default, are insufficient, both because they do not show any fraudulent act on the part of the officers and directors of the corporation and because they state no defense to complainant's suit." This would seem to apply to the questions involved in the present litigation. Then again, on the question of bondholders, the court in the same case said:

"True, it is claimed that the bondholders in the combination requested the foreclosure, and there is the general allegation that complainant is 'co-operating' with the combination. But assuming that the trustee was so requested and complied therewith by instituting the proceedings, it was, after all, merely asserting a right granted and a duty imposed by the trust deed. The circumstance, admitting it to be true, that certain bondholders in association with officers permitted the default to occur—even admitting that they were actuated by an ulterior motive, or purpose, did not endow the trustee with any discretion to do otherwise than to obey the instrument under which it was empowered to act. So far as it was concerned, even admitting that it knew of the circumstances noted, the validity of the debt and the fact of default out of which its duty arose are not in the slightest degree called in question, and the motives which may have actuated the defendant's officers in suffering the default do not disqualify the trustee, nor impair its right as sole complainant to institute and prosecute the suit to foreclose.

". . . Then, because certain bondholders have combined as a reorganization committee, and, as the plan discloses, probably expect to purchase at foreclosure sale, and transfer the property to a new corporation, and the petitioners are unwilling to join this combination, they urge that there is a controversy among bondholders which of itself gives them the right to intervene in this suit. This situation is fully covered by the rule of convenience above referred to. So long as the trustee is not disqualified by reason of a hostile or prejudicial act, or because of conflicting interests vested in, or duties charged upon it, it has and can have no interest in any collateral controversy between bondholders. Until its participation in such controversy is shown, or unless and until it is sought to bring it into the foreclosure proceedings and thereby to influence a different course than would ordinarily be pursued, such controversy is of no concern either of the trustee or of the court entertaining the foreclosure."

The right of a petitioner to intervene in a foreclosure action was considered in the case of *Bowling Green Trust Co. v. Virginia Passenger & Power Co.,* 132 Fed. 921, which has a peculiar application to this proceeding and wherein the court used this language:

"The general rule in judicial proceedings, that all persons interested in a controversy should be made parties thereto in order that their rights may be determined and concluded, is conceded. That there are exceptions, however, to this proposition, is equally clear, and particularly is this true in proceedings in the federal courts in foreclosure suits, and suits for the administration of trust estates. There it is the well-settled doctrine—too well established to need elaboration—that the trustee in the mortgage or trust deed, or other instrument creating a trust estate, speaks and acts for the *cestuis que trust,* and that the

latter are neither necessary nor proper parties, where the fitness of the particular trustee, or his conduct as such in failing to efficiently, honestly, or impartially discharge his duties, is not brought in question. This is a rule largely the result of convenience, and in order to facilitate the proper conduct of litigation. To admit each individual bondholder or stockholder of a corporation to appear of his own motion, and proceed to assert his rights as he may be advised, when the same can be as well asserted through the trustee, will not be tolerated. Indeed, it has become the settled practice, in mortgages of the character under consideration here, to provide in terms that the trustee shall, and the individual stockholder and bondholder shall not, assert this right; and this is one of the provisions of the mortgage in this case. The circumstances under which individual stockholders or bondholders can themselves appear and act in their own behalf has frequently been the subject of review in the courts of last resort, state and federal, in this country, and there is perhaps no branch of the law more definitely determined.'' See also *Clyde v. Richmond & D. R. Co.*, 55 Fed. 445; *Trust Co. of America v. Norfolk & S. Ry. Co.*, 174 Fed. 269; *Mercantile Trust Co. v. United States Shipbuilding Co.*, 130 Fed. 725.

It is to be noted from the petition that collateral matters are alleged which would not be of any particular aid to the court in determining the issues. For this reason, together with the other reasons stated in this opinion, it was within the discretion of the chancellor to refuse permission to a bondholder to intervene and to have collateral issues tried. We reached this conclusion from what was said in *Lisman v. Knickerbocker Trust Co.*, 211 Fed. 413, that is:

''We think also that the court was not bound to permit appellants, as a matter of right, to intervene generally for the purpose of trying out the question of

liability of Hollins & Co. to account for railroad stocks acquired in connection with the reorganization, or the liability of that firm or others for profits on the Ann Arbor purchase, or for damages on account of defaults suffered under the mortgage and collateral trust agreement.''

This statement by the court applies to that part of the petition wherein the petitioner speaks of representations made to the petitioner that the bonds in question were a safe investment, and the court again stated, which applies in the instant case:

''These issues were collateral to the foreclosure suits, and were not concluded by the decrees made. The court was vested with a certain amount of discretion in determining whether to permit intervention for the purposes stated; this discretion does not appear to have been improvidently exercised, and no appeal lies from the action complained of. (Quoting cases.) So far as concerns the effect of the alleged collusive defaults upon the right to decree of foreclosure and sale, it is apparent that when the decree was made the time had actually come, rightly or wrongly, when the sale should be no longer delayed.''

This statement is pertinent and conclusive upon the right of the petitioner to intervene, and for the reasons stated, the order of the court denying leave to file said intervening petition is affirmed. The questions raised as to the decree of sale are disposed of largely by what is said as to the right of the petitioner to intervene, and from an examination of the record this court finds that the decree is free from error and is therefore affirmed.

*Order and decree affirmed.*

WILSON and HALL, JJ., concur.